**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                **Plaintiff,**<br>v.<br><br>**CHRISTOPHER HOHOL and**<br>**BRIAN POSHAK,**<br><br>                               **Defendants.** | CASE NO. |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1. This matter involves an illegal scheme carried out by two senior executives at Veolia Environmental Services Special Services ("Special Services"), a United States subsidiary of Veolia Environnement S.A. ("Veolia"), a multi-national utilities and environmental services company headquartered in Paris, France, over a period of at least three years from 2008 to 2011, to overstate Special Services' earnings before taxes ("EBT") through the falsification of accounting records and circumvention of corporate internal controls.

2. Christopher Hohol ("Hohol"), Special Services' former senior vice president of operations and the most senior executive at Special Services, and Brian Poshak ("Poshak"), the former controller of Special Services, directed and primarily carried out the misconduct.

3. Beginning no later than January 2008 and continuing through February 2011 (the "relevant period"), Hohol and Poshak circumvented internal controls, falsified accounting records, and submitted false financial reports for Special Services in order to meet internal financial projections and create the appearance that Special Services consistently was profitable. Poshak also forged invoices and other documents to support false accounting entries and mislead Veolia's external auditors.

4. Hohol and Poshak also signed monthly financial and internal control attestations certifying the accuracy of Special Services' financial reports and the efficacy of Special Services' internal financial reporting controls, even when they knew that the internal controls were being circumvented and that false financial information was being reported by Special Services to Veolia, Special Services' ultimate parent. The false financial information provided by Special Services as a result of Hohol's and Poshak's misconduct, ultimately, was consolidated into the publicly disclosed financial statements of Veolia. Veolia's financial statements during the relevant period were filed with and furnished to the Commission.

5. Both Hohol and Poshak were paid bonuses during the relevant period that were substantially based upon the financial performance of Special Services, which gave them a powerful motive for ensuring that Special Services appeared profitable. During the relevant period, Hohol and Poshak received $136,000 and $28,000, respectively, in ill-gotten bonus payments.

6. As a result of Hohol's and Poshak's misconduct, Special Services overstated its EBT by a total of approximately $64 million (€50 million) during the relevant period. This, in turn, resulted in the overstatement of operating income in Veolia's consolidated financial statements for the years 2008 through 2010 in the same amounts. After Veolia became aware of

2

the falsifications and overstatements of EBT at Special Services, Veolia corrected the overstatements for each of these years on a retrospective basis in its 2011 annual report that was filed with the Commission.

7. By their actions, Hohol and Poshak violated Section 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1], and aided and abetted Veolia's violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

8. Unless restrained and enjoined by this Court, Hohol and Poshak are likely to continue to engage in acts, practices, and transactions similar to those described in this Complaint.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e) and 78aa].

10. Venue is proper in this district pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts and transactions constituting the violations occurred in this district.

11. Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

3

## DEFENDANTS

12. **Christopher Hohol** ("Hohol"), age 42, is a resident of Green Bay, Wisconsin. From at least January 2007 to May 2011, Hohol was the senior vice president of Special Services, the most senior management official at Special Services during that time, and in that role supervised Brian Poshak and exercised authority over members of the finance department. Hohol resigned from Veolia on May 20, 2011.

13. **Brian Poshak** ("Poshak"), age 39, is a resident of Green Bay, Wisconsin. From at least July 2007 to May 2011, Poshak was the controller of Special Services. Poshak resigned from Veolia on May 19, 2011.

## RELATED ENTITIES

14. **Veolia Environnement S.A.** ("Veolia") is a French corporation with its principal place of business in Paris, France. Veolia is the world's largest utility and environmental services company in terms of revenue. Veolia conducts business worldwide, including in the United States, through four reportable segments: water, environmental services, energy services, and transportation. Each segment is comprised of multiple subsidiaries, which are comprised of multiple business units. Veolia is listed on the Euronext and its American Depository Receipts ("ADRs") are registered with the Commission pursuant to Exchange Act Section 12(b) and traded on the New York Stock Exchange under the ticker symbol VE. Veolia is a foreign private issuer pursuant to Rule 405 under the Securities Act of 1933 ("Securities Act") [17 C.F.R. § 230.405] and Exchange Act Rule 3b-4(b) [17 C.F.R. § 240.3b-4(b)] and is required to file periodic reports with the Commission pursuant to Exchange Act Section 13(a) [15 U.S.C. §78m(a)].

4

15. **Veolia Environmental Services Special Services** ("Special Services") is a subsidiary of Veolia Environmental Services Industrial Services ("VES IS"), which is a subsidiary of Veolia Environmental Services North America ("VESNA"), which is a subsidiary of Veolia Properté, the environmental services segment of the parent, Veolia. Special Services provides, among other things, on-site equipment, maintenance, and repair services to clients who conduct petroleum exploration and operate underwater drilling equipment. Special Services' headquarters is located in Neenah, Wisconsin.

## FACTUAL ALLEGATIONS

### I. Background

16. During the period from 2008 through 2011, Veolia filed annual reports with the Commission on Form 20-F and furnished half year reports to the Commission on Form 6-K. These reports included Veolia's consolidated financial statements, which incorporated the financial results of Veolia's subsidiaries, including Special Services.

17. As part of Veolia's financial reporting process, Special Services prepared its own financial reports on a monthly basis. Poshak prepared these financial reports with the assistance of Special Services' finance and operations staff. These financial reports were submitted to VES IS and, ultimately, Special Services' financial information was consolidated into Veolia's financial statements and publicly disclosed in Veolia's annual and semi-annual reports that, respectively, were filed with, and furnished to, the Commission.

18. From at least 2008 through early 2011, Poshak knowingly falsified and directed Special Services' staff to falsify accounting entries that were reflected in Special Services' monthly financial reports, which artificially increased Special Services' EBT. Poshak also

5

circumvented, and cause others to circumvent, Special Services' internal financial reporting controls.

19. Hohol knew that EBT were being artificially inflated and falsely reported during the relevant period and actively participated in the misconduct by directing that certain false accounting entries be made in Special Services' books, records, and accounts and by circumventing and causing others to circumvent Special Services' internal financial reporting controls. Hohol was intimately familiar with and actively involved in Special Services' financial reporting process, including the preparation of its financial reports. Hohol was responsible for ensuring that Special Services' operating units provided accurate and timely business and financial information to Poshak and the finance department. Hohol also reviewed and approved the financial reports before they were submitted to VES IS.

20. After learning of Poshak and Hohol's misconduct, VES IS and VESNA conducted an internal investigation, and Poshak and Hohol ultimately were forced to resign.

21. On or about August 4, 2011, Veolia publicly announced the discovery of "accounting fraud" at Special Services. At that time, Veolia corrected the overstatements of operating income in its financial statements for 2007, 2008, 2009, and 2010 on a retrospective basis in its annual report for the period ending December 31, 2011, which was filed with the Commission on April 13, 2012.

22. Special Services overstated its EBT by approximately $9 million (€6 million) in 2008, $25 million (€18 million) in 2009, and $30 million (€22 million) in 2010, for a total overstatement during the relevant period of approximately $64 million (€50 million). This, in turn, resulted in the overstatement of operating income in Veolia's consolidated financial statements for the years 2008 through 2010 in the same amounts.

**II.    Hohol Demanded That Special Services Be Made to Appear That It Met Its Financial Projections and Was Profitable Irrespective of Its Actual Financial Performance**

23.    Hohol aggressively exerted his authority over all aspects of Special Services' operations, including the finance department, and used threats and intimidation to compel Poshak and others to do what he ordered, including making Special Services appear profitable even when it was not. Hohol repeatedly pressured Poshak and others, including a Special Services' manager ("Manager") who served as the liaison between the operating divisions and the finance department in the financial reporting process, to report higher than actual revenue.

24.    As part of the month-end closing process, the Manager compiled preliminary revenue data for each of Special Services' operating divisions, which he typically received directly from Special Services' project managers. Hohol insisted on reviewing these preliminary results before they were reported to VES IS. When the preliminary revenue results fell below the previously projected revenues for the period, Hohol insisted that sufficient revenue had not been reported, that there was additional revenue to be found, and that Poshak and Manager needed to "fix the numbers" and make them conform to the financial projections.

25.    Hohol also repeatedly suggested to Poshak which false accounting entries to make, including entries related to inventory and prepaid assets.

26.    In response to Hohol's demands, Poshak routinely falsified, and directed Special Services' staff under his control to falsify, accounting entries in Special Services' general ledger, including entries for fictitious revenue accruals, and entries that improperly reclassified expenses as inventory and improperly reclassified expenses (such as rental equipment, including industrial tools and diving gear) as prepaid assets, which artificially increased Special Services' monthly EBT. After Poshak and others made the alterations, Hohol again reviewed the financial results,

7

which sometimes differed by millions of dollars from the preliminary results reported to him just a few days earlier.

27. Hohol then approved the falsified results that Special Services reported to VES IS, which eventually were consolidated into Veolia's financial statements and filed with the Commission.

28. Poshak repeatedly told Hohol throughout the relevant period that revenues were being falsified and false accounting entries were being made, but this did not deter Hohol from demanding that falsified financial results be recorded and reported to Special Services' corporate parent, VES IS, and ultimately, Veolia.

### III. Hohol Personally Directed Specific False Revenues to be Recorded in Special Services' Books and Records

29. Hohol also directed Poshak and others to record specific fictitious revenue in periods where Special Services was below financial projections.

30. On a number of occasions, after reviewing the preliminary revenue results that he had received from the Manager as part of the month-end closing process, Hohol falsely claimed that he had spoken directly to Special Services' project managers and that they had provided Hohol with higher revenue amounts, in excess of what they had initially reported to the Manager only days earlier. Hohol would then order that these newly-reported revenues be recorded in Special Services' books and records, thereby overstating Special Services' EBT.

31. In January 2008, a Special Services accounts receivable supervisor emailed a Special Services division manager to inquire why additional revenue was being recorded for her division at the end of the month, and the division manager responded: "Chris [Hohol] and Brian [Poshak] took the rev[enue], they can make up the story for this amount. It was not my doing."

8

32. Hohol also expressly directed Poshak and other Special Services' employees to make, or forebear from making, specific accounting entries relating to revenue accruals, workers compensation expenses, bonus accruals, and bad debts, all in order to improperly increase Special Services' EBT.

33. In March 2008, Hohol directed that a false $1.4 million revenue accrual entry be made to the general ledger and attributed to an on-going Special Services' project ("Project 1"). A finance department employee was initially directed to make the entry because she had access to the general ledger, but she refused because she knew that the revenue was fictitious. Poshak then caused another employee with similar general ledger access to make that entry. On the day the false entry was posted, Poshak emailed Hohol and said he was "scared" to book the revenue accrual entries for Project 1. In the same email, Poshak told Hohol, "I know you don't want to hear this and this stays between us. But . . . if the auditors came in here Chris or asked questions to see back-up we have to completely bullshit our way out of this with emails and such."

34. Many of these false entries were made late in the day on days when Special Services completed its month-end close, and typically were large, even dollar amounts, in contrast to genuine revenue, inventory, and prepaid asset entries, and sometimes differed by millions of dollars from the preliminary results that had been provided to Hohol only a few days earlier.

35. Hohol knew that these last minute entries were false and that the falsified financial results ultimately would be consolidated into the financial statements of Veolia that were filed with, or furnished to, the Commission.

9

## IV. Poshak and Hohol Circumvented Internal Controls and Improperly Delayed Recognition of Credits for Prior Overbillings to Special Services' Customers

36. Hohol directly circumvented, and directed Poshak and other Special Services' employees to circumvent, internal controls at Special Services and VES IS relating to credits that Special Services issued to customers for, among other things, overbillings. This improper practice had the effect of artificially inflating EBT in the periods when such credits properly should have been recorded.

37. During the relevant period, Special Services agreed to credit customer accounts for, among other things, prior overbillings, and issued credit memos to document those credits. Special Services' and VES IS's internal control policies in effect during the relevant period required that all credit memos in amounts of $10,000 or more be reviewed and approved by VES IS's chief executive officer ("CEO") and chief financial officer ("CFO").

38. Hohol directed Poshak and others to improperly break up certain credit memos in amounts exceeding $10,000 into multiple credit memos, each in an amount less than $10,000. The resulting credit memos in amounts below $10,000 were not submitted to VES IS's CEO or CFO for review and approval in accordance with Special Services' and VES IS's internal controls.

39. By circumventing internal controls and ordering that credit memos be broken up into smaller amounts, Hohol was able to reduce the amount of each credit that would be recorded on Special Services' books and records and in its financial reports for the periods in which the credits were issued and should have been recorded in full in accordance with applicable accounting standards. This improperly increased Special Services' EBT in those periods and concealed this practice from scrutiny by VES IS's senior management and Veolia's external independent auditors. Hohol then would direct that portions of the broken-up credits, in smaller

10

amounts, be recorded by Special Services in subsequent periods, when they would be less likely to attract scrutiny from Veolia's external auditors and VES IS executives.

40. On June 21, 2010, Hohol sent an email to Poshak and others at Special Services stating: "I had asked two weeks ago for a 9K credit memo for [Customer 1] . . . It's important to get this handled in the 'good months.'" After learning that the credit memo was being broken up, Hohol wrote back: "I need two written off this month then one in July. There is a reason I asked this to be done. Auditors typically look at July-Oct." (Emphases added).

## V. In Order to Conceal the False Accounting Entries, Poshak Altered, and Directed Special Services' Finance Staff to Alter, Supporting Documents That Were Submitted to Veolia's External Auditors

41. In order to create documents to support the false general ledger entries and conceal the illegal scheme, Poshak falsified, and caused other members of Special Services' finance staff to falsify, invoices, checks, inventory reports, and other documents to support the false accounting entries that had been selected for testing by Veolia's independent external auditors, as part of Veolia's year-end 2008, 2009, and 2010 external audits.

42. During each of the year-end audits for 2008, 2009, and 2010, Poshak told Hohol that Special Services did not have documentation to support the false accounting entries, and that he would to have to create such documentation to provide to the external auditors. Hohol directed Poshak to do whatever was necessary to conceal the scheme.

43. The recurrent falsification of supporting documentation was widely known among Special Services' finance staff as the "arts and crafts project." After one such "arts and crafts" weekend, Poshak and another employee of the finance department depleted all of the white-out in the office while altering and falsifying documents.

11

## VI. Poshak and Hohol Circumvented Internal Controls When They Signed False Special Services' Monthly Financial and Internal Control Attestations

44. Hohol and Poshak further signed monthly financial and internal control attestations, even though they knew that the financial results were false and that internal controls were being circumvented.

45. From at least January 2008 through February 2011, Poshak and Hohol signed Special Services' monthly financial and internal control attestations, certifying, among other things, that the financial information that Special Services provided for inclusion in VES IS's financial statements was accurate, and that Special Services had internal controls adequate to conclude that there are no material misstatements in the financial statements and therefore, there are "no significant deficiencies in internal control."

46. The monthly attestations included the following specific representations regarding the accuracy of Special Services' financial statements:

> All known events that have an impact on financial reporting are identified, updated and recorded in the correct accounting period;
>
> All general ledger account reconciliations have been completed on a timely basis . . . [and] identified differences are resolved and recorded in the appropriate accounting period;
>
> The amount shown for inventories represents physical quantities determined by count within the past 12 months and has been adjusted to the physical inventory value during the period in which the count occurred;
>
> All revenue transactions . . . are supported by work in process documentation . . .;
>
> The accounts receivable subsidiary ledger has been reviewed and all receivables are valid. Accounts receivable known to be uncollectible have been written off and adequate provisions have been made for adjustments and losses in the collection of receivables.

12

47. Poshak and Hohol signed such attestations for each monthly reporting period from January 2008 through February 2011, even when they knew that those specific statements were false.

## VII. Hohol and Poshak Benefited From Their Misconduct

48. During the relevant period, Poshak and Hohol both were paid bonuses pursuant to a "Management Incentive Plan" that were based primarily on Special Services and VES IS achieving certain financial objectives. In 2008, Hohol and Poshak were paid $75,000 and $19,000, respectively, and, in 2009, Hohol and Poshak were paid $61,000 and $9,000, respectively, in bonuses that were based on Special Services and VES IS having achieved financial objectives.

49. Special Services and VES IS did not achieve their financial objectives in 2008 and 2009, but only appeared to have done so as a result of Poshak and Hohol scheme to overstate Special Services' EBT for those years. In fact, Special Services' and VES IS's EBT were overstated by $9 million in 2008 and $25 million in 2009. Hohol and Poshak were not entitled to receive bonus amounts for those years.

50. Hohol was paid a total of $136,000 in ill-gotten bonus payments.

51. Poshak was paid a total of $28,000 in ill-gotten bonus payments.

52. Poshak and Hohol did not receive bonuses in 2010 because Veolia had become aware of their misconduct before bonuses were paid.

## FIRST CLAIM FOR RELIEF

### Violations of Section 13(b)(5) of the Exchange Act and Rule 13b2-1 Thereunder

53. Paragraphs 1 through 52 are re-alleged and incorporated herein by reference, as though fully set forth herein.

13

54. Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] provides that "[n]o person shall knowingly circumvent … a system of internal accounting controls or knowingly falsify any book, record, or account" of a public company.

55. Rule 13b2-1 of the Exchange Act [17 C.F.R. § 240. 13b2-1] provides that "[n]o person shall, directly or indirectly, falsify or cause to be falsified, any book, record or account subject" to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

56. Section 13(b)(2)(A) requires issuers having a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78] or that are required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

57. By engaging in the conduct alleged above, Hohol and Poshak knowingly circumvented a system of internal accounting controls and knowingly falsified books, records and accounts described in Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)] and, directly or indirectly, falsified or caused to be falsified, books, records or accounts subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

58. By reason of the foregoing, Hohol and Poshak each violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 thereunder [17 C.F.R. § 240. 13b2-1] and are likely to commit such violations in the future unless enjoined from doing so.

## SECOND CLAIM FOR RELIEF

**Aiding and Abetting Veolia's Violations of Section 13(b)(2)(A) of the Exchange Act**

59. Paragraphs 1 through 52 are re-alleged and incorporated herein by reference, as though fully set forth herein.

60. Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] provides that "any person

14

that knowingly or recklessly provides substantial assistance to another person in violation" of a provision of the Exchange Act, or any rule or regulation thereunder, "shall be deemed in violation of such provision to the same extent as the person to whom such assistance is provided."

61. Hohol and Poshak, by their conduct alleged above, knowingly and recklessly caused Veolia to make and keep books, records, and accounts during the relevant period that did not, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of Veolia's wholly-owned subsidiary, Special Services.

62. By engaging in the conduct described above, Hohol and Poshak aided and abetted Veolia's violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] by knowingly or recklessly providing substantial assistance to an issuer having a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], in failing to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer and are likely to commit such violations in the future unless enjoined from doing so.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

### Permanent Injunctions

Permanently enjoin Hohol and Poshak from violating Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1], and from aiding and abetting violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78t(e)];

## II.

### Disgorgement

Order Hohol and Poshak to disgorge any ill-gotten gains as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon;

## III.

### Penalties

Order Hohol and Poshak to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

## IV.

### Further Relief

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: January 14, 2014                                   Respectfully submitted,

                                                          s/ Kelly J. Rock
Of Counsel:                                               Kelly J. Rock (DC Bar # 472232)
Yuri B. Zelinsky                                          Drew M. Dorman (NY Bar # 4306148)
Securities and Exchange Commission                        Attorneys for Plaintiff
                                                          Securities and Exchange Commission
                                                          100 F Street, N.E.
                                                          Washington, DC 20549-4010
                                                          Telephone: (202) 551-4760
                                                          Facsimile: (202) 772-9277
                                                          Email: rockk@sec.gov